# Pennington v. Shannon, Auditor of Public Accounts.

(Decided Oct. 12, 1937.)

A. C. RUSSELL for appellant.

HUBERT MEREDITH, Attorney General, and A. E. FUNK, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF—Reversing.

Joe Middleton was indicted in Elliott county, Ky., for the crime of murder. He fled the state and was later apprehended at Burley, in the state of Idaho. The appellant, who was sheriff of Elliott county, Ky., received information of Middleton's detention in Idaho, in August, 1934, and immediately proceeded to go to the state of Idaho for the purpose of bringing him back to Elliott county for trial on the said charge. He was tried and convicted and sentenced to 17 years in the state penitentiary. Thereafter appellant presented his claim to appellee, E. E. Shannon, auditor of public accounts of the commonwealth of Kentucky, for his expenses incurred in the apprehension and return of Middleton from the state of Idaho to Elliott county, amounting to $346.60, which appellee refused to honor or certify to the treasury of the state of Kentucky for payment.

At the 1936 session of the General Assembly of Kentucky, a joint resolution was adopted by the House

and Senate appropriating said amount of money for the payment of appellant's claim (Acts 1936, c. 453).

The resolution reads:

"Resolution for the relief of Cecil Pennington, Sheriff of Elliott County, Kentucky, for mileage and expenses incurred by him as agent for the Commonwealth of Kentucky.

"Whereas, Cecil Pennington, on August nine (9), one thousand nine hundred thirty-four (1934), was duly appointed by the Governor of the Commonwealth of Kentucky as agent of the Commonwealth to go to Burley, Idaho, to present requisition papers of this Commonwealth to the Governor of Idaho and to bring back Joe Middleton, a fugitive from justice of this State, under indictment for murder in Elliott County, Kentucky, and

"Whereas, Cecil Pennington, under said appointment, proceeded to the State of Idaho and to the city of Burley to bring back said fugitive and found on arrival said fugitive, which he, Cecil Pennington, delivered to Elliott County, Kentucky, on August eighteenth (18), one thousand nine hundred thirty-four (1934) and said fugitive was convicted and sentenced for a period of seventeen (17) years in Kentucky Reformatory, and

"Whereas Cecil Pennington, in performing his said duty as agent aforesaid, incurred expenses and traveled four thousand five hundred seventy-two (4,572) miles to and from Idaho at six cents (6c) per mile, total of two hundred seventy-four dollars and thirty-two cents ($274.32)—10 meals for prisoner, five dollars ($5.00) train fare for prisoner, Joe Middleton, forty-two dollars and twenty-eight cents ($42.28); fees paid P. D. Dade, Sheriff at Burley, Idaho, twenty-five dollars ($25.00), making the total three hundred and forty-six dollars and sixty cents ($346.60); Therefore,

"Be it Resolved by the House of Representatives and the Senate:

"That the said amount three hundred and forty-six dollars and sixty cents ($346.60), be and is hereby appropriated to be paid to the said Cecil Pennington and the Auditor of Public Accounts is directed to draw his warrant upon the Treasurer for

the said amount and deliver the same to Cecil Pennington for the purpose aforesaid.''

After the adoption and effective date of the resolution appellant again made demand on appellee to pay to him the sum set out in the resolution and appellee again refused to pay same, whereupon appellant brought this action in the Franklin circuit court seeking a mandatory injunction against appellee requiring him to draw his warrant on the treasury of the commonwealth of Kentucky payable out of the appropriation made and provided in the resolution. The court sustained a demurrer to the petition and plaintiff refusing to plead further his petition was dismissed and he appeals. Plaintiff alleged in his petition, inter alia, as follows:

"The plaintiff says that on the said date of the 9th day of August 1934, he was duly appointed by the Governor of the Commonwealth of Kentucky as agent of the Commonwealth to go to Burley, in the State of Idaho and present requisition papers of the Commonwealth of Kentucky to the Governor of the State of Idaho and to bring back Joe Middleton, a fugitive from justice from the State of Kentucky and under indictment for a felony in Elliott County, Kentucky. The plaintiff says that as agent of the Commonwealth of Kentucky under said appointment by the Governor of the Commonwealth of Kentucky, he proceeded to Burley in the State of Idaho to bring back said fugitive, Joe Middleton, and found the said fugitive, on arrival at Burley, Idaho and that he delivered the said fugitive to Elliott County, Kentucky on the 18th day of August 1934 and that said fugitive was convicted and sentenced for a period of seventeen years in the Kentucky State Reformatory.''

He then sets out the various items of expenses incurred, as indicated in the resolution, which resolution he also pleaded and made a part of his petition.

The judgment of the court sustaining the demurrer and dismissing the petition assigns no reason or ground therefor, but it is the contention of counsel for appellee that the court properly sustained the demurrer on the ground that the resolution contravenes section 58 of the Constitution of Kentucky. That section reads:

"The general assembly shall neither audit nor allow any private claim against the Commonwealth,

except for expenses incurred during the session at which the same was allowed; but may appropriate money to pay such claim as shall have been audited and allowed according to law."

It is seen that the section of the Constitution quoted above deals with private claims, as distinguished from a claim for a public purpose. The question to be determined is whether the resolution in question seeks to appropriate money for a private claim in contemplation of the Constitution, or whether the services rendered by appellant, sought to be compensated, was for a public purpose. If it be of the former class it comes within the constitutional inhibition; but, if it belongs to the latter, it is valid; and, to determine its classification, the object it serves must be ascertained.

In Hager, Auditor, v. Kentucky Children's Home Society, 119 Ky. 235, 83 S. W. 605, 608, 26 Ky. Law Rep. 1133, 67 L. R. A. 815, a private corporation organized under the laws of this state for purely charitable purposes, having for its purpose the seeking out of destitute children and providing for them homes where they will be under the supervision of the institution during their dependent minority, the Act of the General Assembly of 1904 (chapter 7) appropriating $15,000 annually to the corporation, was attacked on the ground that the appropriation was violative of section 171 of the Constitution providing that taxes should be levied for public purposes only; and further, that it was contrary to section 177 of the Constitution providing that the credit of the commonwealth shall not be given, pledged, or loaned to any individual, company, corporation, or association, etc.

The court held that the state being interested in the welfare of its indigent poor, destitute, delinquent, and homeless children, the purpose of the appropriation was a public one, and the fact that the state was administering this governmental function by an individual or corporation as its agent was not material, and the appropriation did not offend section 177 of the Constitution; and, it being for a purpose for which a tax might be levied and collected, it did not violate section 171 of the Constitution. The court said:

"These authorities clearly settle that the vital point * * * is whether the purpose is public; and that, if it is, is does not matter whether the agency through which it is dispensed is public or is not; that the ap-

propriation is not made for the agency, but for the object which it serves; the test is in the end, not in the means."

Many authorities are cited and reasons stated in that opinion in support of the court's conclusion, but we deem it unnecessary to quote further therefrom. A reference to that opinion is sufficient.

The same reason applied in the Hager Case, supra, is applicable to the case at bar. It could not be said that the state is not interested in nor benefited by the apprehension and prosecution of criminals who commit offenses against society nor, could it plausibly be said that a sheriff when acting in his official capacity in the apprehension of criminals is not acting in the interest of the state, or not performing a public function.

Appellant recognized that the services performed by him was a part of his duties as sheriff and seeks no extra compensation for such services. He merely seeks restitution of his personal funds expended in the performance of his duty as a servant of the law. Officers of the law should be encouraged rather than discouraged in the enforcement of the law and in the apprehension and prosecution of criminals who commit offenses against the state. And this is especially true when an officer acts in good faith and in the interest of the state but not merely to enrich himself. In such cases the officer is rendering a public service. As said in the Hager Case, supra, the Legislature is authorized to make an appropriation for any purpose for which a tax may be levied and collected pursuant to section 171 of the Constitution. It cannot be disputed that taxes are levied and collected for the compensation of officers and for certain expenses incurred by them when in the discharge of their official duties. It may be true that in some instances officers may incur expenses or perform acts for which they cannot be compensated because of a statute or other legal technicalities forbidding payment of same. However, it is the settled rule in this and many other jurisdictions that in such cases the Legislature may waive a statute by appropriating money to be paid out of the public treasury for such services or expenses incurred in the interest of the public. It is the established rule in this state and, many other states, that where the state is, in justice and equity, indebted for services rendered, the state Legislature may pay for the services rendered to it. See Board of Education of

Calloway County v. Talbott, 261 Ky. 66, 86 S. W. (2d) 1059, 1064, where, among other things, it is said:

"An example is where a public officer has been subject to a responsibility and loss in an honest attempt to perform public duty. The Legislature may provide for his compensation or indemnity by the state or other political division for which he was acting. * * * In determining whether the Legislature may make an appropriation, or direct a tax to be levied, to pay a moral claim, the question arises in every case as to whether the particular claim is a moral one for which the state or other political division may appropriate the money or levy the tax. * * *

"It may make an appropriation for whatever purposes taxes may be laid."

See, also, Fairfield v. Huntington, 23 Ariz. 528, 205 P. 814, 22 A. L. R. 1438; Babcock v. State, 231 N. Y. 560, 132 N. E. 888; 25 R. C. L., sec. 34, page 402. In the Arizona and New York cases, supra, it appears that those states have constitutional provisions similar to those of our state here in question and the doctrine enunciated in those cases are in harmony with the Kentucky cases herein cited.

Section 59 of the Kentucky Constitution, subdivision 13, authorizes the Legislature to legalize, as against the commonwealth, the unauthorized or invalid act of an officer or public agent of the commonwealth. In Carroll v. Bosworth, Auditor, 151 Ky. 337, 151 S. W. 916, 919, it is said:

"We have here by inference express authority for the Legislature to legalize or validate as against the commonwealth the unauthorized or invalid acts of its officers or agents; and the act in this case, taken and read as a whole, cannot be interpreted in any other way than to legalize the unauthorized contract between the Attorney General and appellant."

It follows, by analogy, that, as the Legislature may legalize, as against the commonwealth, the unauthorized or invalid acts of officers or agents of the state, it may also legalize a claim for expenses or for services which may be unauthorized by statute, when such a claim is for a public purpose.

The facts of this case, viewed in the light of the authorities herein cited, impel us to the conclusion that the appropriation of money, evidenced by the resolution here in question, was for a public purpose and does not come within the inhibition of section 58 of the Constitution.

It is stated in brief of appellant that another reason why the demurrer should have been sustained to the petition is that appellant's claim was not approved by the department of finance as provided in section 4618-85, Kentucky Statutes, 1936 Revision.

If it be conceded that the claim should be approved by the department of finance, such approval would be merely perfunctory. The resolution being valid, it speaks for itself, and the department of finance has no authority to disapprove it. The determinative question involved is the validity of the resolution.

It follows that the judgment must be, and is, reversed and remanded, with directions to set it aside and enter judgment in conformity to the prayer of the petition.