## No. 2477
### Second Circuit

---

## GILBERT C. WELLS v. STANDARD PIPE LINE COMPANY, INC.

---

(November 4, 1925, Opinion and Decree.)
(December 17, 1925, Rehearing Refused.)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Appeal—Par. 625; Master and Servant—Par. 160 (I).**

The finding of the trial court in a suit for compensation under Section 8, Subsection 1 (b) of the Workmen's Compensation Act No. 20 of 1914 as amended by Act 216 of 1924 as to the character of disability of injured employee not being manifestly erroneous is affirmed.

ON APPLICATION FOR A REHEARING

2. **Louisiana Digest—Master and Servant —Par. 160 (I).**

The appellate court is guided solely by what is contained in the record in a workmen's compensation case under Act 20 of 1914 and will not remand the case for a new trial to obtain district judge's opinion in writing.

Appeal from First Judicial District Court of Louisiana, Parish of Caddo, Hon. T. F. Bell, Judge.

This is a suit brought by an injured employee for compensation under Section 8, Subsection 1 (b) of the Workmen's Compensation Act No. 20 of 1914 as amended by Act 216 of 1924. There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Long and Crow, of Shreveport, attorneys for plaintiff, appellant.

T. M. Milling, F. L. Hargrove, of Shreveport, attorneys for defendant, appellee.

ODOM, J. This is a suit under the Workmen's Compensation Act. The plaintiff was employed by the defendant to work on a pipe line and on December 29, 1924, he attempted to move what is called a "horse" which was used for the purpose of lifting and lowering the iron pipe, when he strained or sprained his back in the lumbar region.

He alleges that the ligaments and muscles were strained, torn and lacerated, and that the bony structure of the back was deranged and left without proper support and apposition, and that his nervous system has been deranged and impaired, and that as a result of said injury he is suffering total disability to do work of any reasonable character; and he claims compensation at 65% of his wages for 400 weeks under clause (b) of Subsection 1 of Section 8 of Act 216 of 1924.

Defendant, in answer, admitted the employment and admitted that plaintiff was injured, but defends this suit on the ground that plaintiff has fully recovered and that he has been paid all the compensation to which he is entitled.

There was judgment in the lower court rejecting plaintiff's demand, from which judgment plaintiff has appealed.

### OPINION.

The testimony shows that while plaintiff was at work for the defendant assisting in lowering or repairing a pipe line he at-

tempted to lift a heavy weight and that in the course of his work he complained that he had strained his back. He reported that fact to the foreman of the gang who suggested that he go to the camp and report to a physician. Plaintiff walked some distance to the camp and after remaining there for a short time went to his home in an automobile. He subsequently called a physician who strapped his back with adhesive tape. It seems that this tape remained on his back for a week or such a matter when it was removed and that plaintiff still complained that his back hurt to some extent. Shortly thereafter he made a trip to Texas in an automobile driven by another party. He says that after reaching Texas he made arrangements to work for an oil refining company there in its machine shop and that he was to begin work at a certain time but received a telegram from the defendant company requesting him to return.

Upon his return he was requested to submit to an examination by a physician of Shreveport. It seems that he was examined by a physician here and was then asked to report to the office of the attorney of the defendant company, but instead of doing this he filed the present suit.

With reference to his condition, he testified that on the occasion above mentioned he strained his back or pulled a muscle and that he is now unable to work because his back hurts. He says that sometime after the accident he attempted to paint some chairs for his mother and that his back "pulled loose again" and that subsequently while washing his automobile it gave way for the third time.

According to his testimony he felt able to go to work in Texas in a machine shop, although he testifies he was not told what kind of work he was to do; and he says also that he offered to go back to work for the defendant company to prove that his back was all right, but that the defendant company refused to give him work.

Plaintiff lives at Lecompte, Louisiana, and after he returned from Texas and, as we understand, after his suit was filed, he returned to Lecompte where he has remained ever since.

Some four or five witnesses were called by defendant who testified that they had frequently seen the plaintiff play pool at Lecompte and that they noticed no disability whatever in his ability to lean over the pool table and pick up pool balls from the floor and that according to appearances his back is normal.

Doctor C. H. Cassity examined the plaintiff on March 23, 1925, and says that he got a complete history of the case from plaintiff. He says that his examination showed that the plaintiff bent forward with a great deal of difficulty; that the lumbar muscles jumped and jerked; and that the plaintiff suffers pain when he bends his back, and that his conclusion was, from the history of the case as gotten from the plaintiff, that he had a severe sprain of the lumbar muscles and ligaments.

On being asked as to the probability of recovery, he said:

"Well it is like all of those cases, pretty much—It is problematical, they depend upon the severity of the sprain and secondary upon the back as to whether it was properly treated in the beginning and whether he was hurt there several other times."

He says, further, that recovery will depend largely on the treatment plaintiff receives and that if the man's back had been properly treated he should have recovered within four months after the accident.

Doctor E. L. Sanderson examined the plaintiff on the day of the trial and says:

"About the only thing that I could find in an objective way is that in bending over there is a quivering of the muscles in the back which indicates that they are sprained or sore or in some way the nerves are interfered with."

He says that if plaintiff's story is true, together with what he found

"I presume that there was probably some straining of the erector muscles of the back."

And he further says that there is a probability that some of the nerve fibres' were injured. He says that in cases like this there is a possibility of injury through life. On being asked for his opinion as to plaintiff's condition, he stated that it is very difficult to give an opinion in a case like this and that if the plaintiff's statement is to be taken as true he has a back which will be easily strained in the future; and he was asked:

"Would such an injury to the back suggest that he should not attempt to do hard manual labor?"

And he answered:

"I would not be positive about that; I would just say that in attempting to do hard manual labor, if his back became strained again then he should certainly not attempt to do any more. It would be a matter of testing it to try it out and see."

On further examination he testified that if a man's back is actually sprained he cannot bend over. He says that he caused the plaintiff to stoop and to bend his back and that aside from what the plaintiff told him he would not believe that plaintiff had an injury to amount to anything.

"From my examination without the history, I would not judge that there was a great deal the matter with him."

And he further testified that, leaving out what the man says, from his examination

of him he would say that he is now able to work.

Doctor Sanderson made it perfectly plain that there is practically nothing to indicate that the plaintiff's back was injured or that he is now unable to do manual labor, except what the man himself states.

Doctor S. C. Barrow made an x-ray photograph of plaintiff's back and testified that his spine is normal.

Doctor H. C. Jones, who treated plaintiff after the injury and who had recently made another examination of him, testified that there is nothing the matter with plaintiff.

Doctor Jones, along with others, testified that he had seen the plaintiff playing pool and that he bent his back and moved his body in a perfectly normal manner.

According to the testimony of the physicians the condition of plaintiff's back even as testified to by him is not such as to produce disability to labor. It is their opinion that at most his back will be more easily strained in the future.

The judge of the lower court saw the plaintiff and heard him testify and heard all the other witnesses, and his conclusion on the question of fact has great weight with us. We cannot say that he manifestly erred in his judgment.

Therefore, for the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be affirmed at plaintiff's cost.

———

ON APPLICATION FOR REHEARING.

REYNOLDS, J.　Plaintiff bases an application for rehearing largely on the ground that this court in its opinion gave great weight to the findings of fact of the district judge as to plaintiff's condition and contends that the district judge in rendering his oral decision stated:

"In this case I think the plaintiff's condition is about as reported by Dr. Sander-

son, that is, he has a back that is in such shape that it will pull loose or is easy to re-strain and hurt over. I think such a case is not covered by the compensation statute."

The district judge's reasons not being in writing, they cannot be considered by us, for we must be guided solely by the record as contained in the transcript.

Plaintiff insists that the case should be remanded for a new trial and contends that under Section 1 of Article VII of the Constitution of 1921, he will request and secure a written opinion from the district judge.

Plaintiff has had "his day in court" and having failed to obtain a written opinion from the district judge we do not feel warranted in remanding that case for a new trial.

Authority: Daniels vs. Shreveport P. & R. Corporation, 151 La. 800, 92 South. 341.

A rehearing is therefore refused.