**Marshall David BUNCH, Appellant,**

v.

**PERSONNEL BOARD, COMMON-WEALTH OF KENTUCKY, Department of Parks, Commonwealth of Kentucky and Lou Karibo, Commissioner of Parks, Appellees.**

Court of Appeals of Kentucky.

Oct. 24, 1986.

Daniel B. Goldberg, Appalachian Research and Defense Fund of Ky., Inc., Columbia, for appellant.

Henry J. Curtis, David L. Armstrong, Atty. Gen., Paul Richwalsky, Asst. Atty. Gen., Frankfort, for appellees.

Before COOPER, HOWARD and McDONALD, JJ.

### REVERSING AND REMANDING WITH DIRECTIONS

HOWARD, Judge.

This is an appeal from a judgment of the Franklin Circuit Court upholding a state employee's discharge from his position as a cook at Lake Cumberland State Park.

The appellant was employed as a cook in the kitchen at the Lake Cumberland State Resort Park. The employees at the state parks are divided into three categories—seasonal, permanent part-time and permanent full-time. A seasonal worker in general works only during the summer and is then laid off. The appellant began working as a seasonal cook in 1973.

In April of 1980, the appellant was given a permanent (year-round) position designated "probationary part-time." KRS 18A.110(8) allows for a probationary period, not exceeding one year, for appointees to state employment before that appointment becomes final. The Personnel Board set the probationary period to be six months for all appointees. The probationary period may be fixed at longer than six months in certain circumstances but only if approval is given by the Board.

On November 1, 1980, the appellant successfully completed his six-month probationary period and was given "status." One of the benefits of completing the six-month probationary and attaining status, is that under KRS 18A.110(16), such an employee may only be dismissed for cause and, under KRS 18A.095, upon dismissal,

demotion, suspension or other penalty, he may bring the matter to the Personnel Board for review. If the dismissal or other action is upheld by the Board, the employee may appeal to the Franklin Circuit Court. KRS 18A.110. Thus, the appellant had attained these rights as a permanent part-time employee.

On November 1, 1982, the appellant's classification was changed from permanent part-time to "provisional full-time." For purposes of the present case, provisional refers to the fact that the appellant was again subject to the probation period. The reclassification was initiated by the State, not the appellant.

When the appellant's classification was changed from part-time to full-time, the procedure followed by the Personnel Board required him to resign from the part-time position on October 31, 1982, to be reappointed the next day, November 1, 1982, to the full-time position.

In December of 1982, the appellant was diagnosed as having a painful arthritic condition in his knees. The condition was aggravated by the hard concrete floors of the Park's kitchen. The appellant's physician recommended rest, followed by a trial at working. The appellant returned to work on March 1, 1983, but the pain was still severe. On March 2, 1983, the appellant was granted sick leave without pay. Then, on March 28, 1983, the appellant was discharged by the State because he had only worked one day since December 31, 1982.

The appellant did not have the required status in the full-time position to appeal his dismissal to the Personnel Board as he had not yet fulfilled the probationary period. The appellant lost his status as a part-time employee when he resigned. However, it is uncontested that the appellant worked essentially full-time-hours between April, 1980, and October 31, 1982. In addition, when a change was made to provisional full-time, the appellant's hours, duties and responsibilities were not altered from those he was assigned as a part-time employee.

On May 20, 1983, the Personnel Board denied the appellant's request for an appeal of his dismissal. On June 13, 1983, the appellant brought suit in the Franklin Circuit Court against the appellees. The appellant demanded he be given the appeal of his charge authorized by KRS 18A.095 and claimed his discharge was due to arbitrary and unconstitutional actions by the State.

The trial court issued a summary judgment in favor of the appellees on the first claim on January 29, 1985. Following a trial on the question of arbitrariness by the State, the trial court found for the appellees.

The appellant first contends that since the change in his status from permanent part-time to provisional full-time was administrative in nature, not a change in his duties, responsibilities or hours, the Personnel Board has acted contrary to the intent of the statutes contained in Chapter 18A by denying his appeal.

The Department of Personnel maintains two "registers"—one for part-time employees and the other for full-time employees. In order to move from the part-time register to the full-time register, an employee must resign from his part-time position and be appointed to the full-time register. This requirement is a "custom and policy" of the Department of Personnel to allow competition for full-time jobs with those already on the register.

This rationale is simply not applicable in the appellant's situation. There evidently was no competition for a full-time cook's position when the appellant's classification was changed. The appellant was working full-time hours and the reclassification was simply a change "on the books" to reflect that. Why it took over two-and-one-half years to make the change is unexplained.

The appellees claim that the probationary period is necessary in order to gauge a new employee's ability to adequately perform a job. This statement is no doubt true in circumstances such as when a new employee is hired or a present employee is transferred to perform a different job than he had done previously in which his responsibilities or duties are increased or changed.

This rationale does not hold true for someone in the appellant's circumstance. As he was continuing in the same position and performing the same tasks he had done for two-and-a-half years, a probationary period was completely unnecessary. If his work was unsatisfactory, it does not seem logical that he would have been placed on full-time basis.

Thus, the appellant argues that he had fulfilled the probationary period to attain status, performing the same tasks as a full-time employee, and it was unreasonable and not in keeping with the proposed rationale for probationary periods to require that he take a second probationary period. In essence, he claims the appellees took advantage of their policy to strip him of rights conferred by statute.

The proper procedure for the interpretation of statutory language is to follow the intention of the legislature. *Commonwealth v. Carroll County Fiscal Court,* Ky.App., 633 S.W.2d 720, 722 (1982).

██ KRS 18A.110(8) provides in part that "[u]nless the appointing authority notifies the employee prior to the end of the probationary period that the employee's services are not satisfactory, the employee shall have status in the classified service." The reasonable implication of this language is that the purpose of the probationary period is to determine whether or not an employee can satisfactorily perform the task required of a certain position. In the appellant's case, the question of satisfactory performance was answered when he worked full-time hours, though listed only

as part-time help, and successfully earned status in 1980.

The Personnel Board then has applied a technical requirement of its policies to relieve the appellant of his statutorily created rights. It would be safe to assume that the same technicality could be used in a similar way with persons in situations like the appellant's.

██ An administrative agency is prohibited from acting in an arbitrary manner by § 2 of the Kentucky Constitution. *Pritchett v. Marshall,* Ky., 375 S.W.2d 253 (1964). *See Kaelin v. City of Louisville,* Ky., 643 S.W.2d 590 (1982); *Wagoner v. Blair Fork Coal Co.,* Ky., 534 S.W.2d 250 (1976). We believe the denial of the appellant's rights to seek review of his discharge before the Personnel Board was arbitrary. The appellees have failed to articulate any rationale by which the merit system might be protected, or legislative intent of Chapter 18A carried out by its actions in the appellant's case.

Therefore, the judgment is reversed and remanded with directions for the trial court to order the Personnel Board to set an evidentiary hearing on the appellant's discharge and for further action consistent with this opinion.

All concur.